UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:09CR445 CAS (AGF) |
| LATISHA ANDERSON, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motion filed by Defendant, Latisha Anderson. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence and statements. (Doc. #19). An evidentiary hearing was held on September 15, 2009, at which Defendant was present and represented by her counsel. At the hearing, the government presented the testimony of Detective Harold Stone, employed with the St. Louis Metropolitan Police Department ("SLMPD") in the narcotics division. Det. Stone has been a police officer for 16 years, and a Detective for 13 years. The witness was cross-examined extensively by defense counsel. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

On June 12, 2008, the SLMPD received a tip that Defendant Latisha Anderson was staying in room 1053 at the Drury Hotel in downtown St. Louis, and that she had paid for the room with cash. The officers also determined that Defendant had a prior conviction for narcotics.

Based on the information they received, Det. Stone and other detectives set up surveillance at the hotel. They observed Defendant exit the hotel with an individual named Larry Green ("Green"). Defendant was carrying a blue duffle bag and a brown purse, and Green was pulling a suitcase. After they exited the hotel, Defendant waited with all of the bags in the pickup area while Green went to get the car. He returned driving a black Dodge Magnum, which is a station-wagon type of vehicle. Defendant put the purse and the duffle in the rear hatchback area of the car and got in the front passenger seat. During their surveillance, the officers checked the license plate, and determined that it belonged to a different vehicle, as it was registered to a 1993 Ford in the name of Diane Harvey.

The officers followed the Dodge Magnum as Green drove it to several locations. At one point, Green drove to an apartment complex at 7th and Carr, where they picked up two additional passengers, one of whom was a juvenile, who were seated in the back seat. Because the complex had a gated lot, the officers were not able to observe the Magnum while it was in the lot, and therefore did not see whether the two new passengers handled any of the items in the back of the car or placed any items into the car.

During the course of the surveillance, Special Agent ("SA") Bret Johnson, with the Drug Enforcement Administration, joined their surveillance. After SA Johnson joined the surveillance, the car drove to the parking lot of a Schnucks grocery store, at which point the juvenile exited the car and conducted what Det. Stone believed, based upon his experience, to be a hand-to-hand narcotics transaction with a person driving a Jaguar. The Jaguar then drove off and the juvenile re-entered the car. Green also drove to a barbershop which he entered. This was significant because the investigators had prior knowledge that this barbershop was involved with narcotics trafficking.

Green returned from the barbershop and drove off, and the officers continued to follow. At the corner of Spring and Page Avenue, the Magnum stopped at a stop sign, then backed up and stopped next to Det. Stone's vehicle, in the middle of the street, and the driver looked in Det. Stone's direction. The Magnum then pulled onto the parking lot of a Family Dollar Store, and parked. Green got out of the car and went inside the Dollar Store, while Defendant and the other two passengers waited in the car.

Because of the manner in which the car had backed up, the officers were concerned that their surveillance had been compromised, and decided to approach Green and investigate. When Green came out of the store, the officers approached him, advised him of their investigation and that they were police officers, and requested consent to search the Magnum and its contents. Green agreed, and they presented him with a written consent to search form, which Green signed at 11:55 a.m. Less than five minutes passed from the time when they first made the request and Green signed the form. The

3

consent form described the car in detail and provided consent to search the car "including its contents and the contents of its trunk." Above the signature line, the form stated:

> I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form.
>
> I further state that no promises, threats, force or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form.

Gov't Ex. A.

At the time he signed the form, Green was approximately 30 years old, did not appear to be under the influence of any drugs or alcohol, and appeared to understand what was being said. He was standing in the parking lot, was not in custody or restrained in any fashion, and no threats or promises were made to induce his consent.

Prior to beginning their search, the officers asked Defendant and the other two passengers whether they had anything in the vehicle, and the occupants did not answer. The officers then asked whether any of the individuals had any firearms or narcotics in the vehicle, and the two back seat passengers said no, and Defendant made no comment. At this time, none of the individuals in the Magnum had been placed under arrest and they were not restrained in any fashion. The officers then proceeded to search the vehicle. As they conducted the search, neither Green nor any of the other passengers, including Defendant, objected to the search or attempted to limit it in any respect.

In the hatchback area of the car the officers observed the purse and the luggage the officers had seen them place in the car at the hotel. They asked Defendant if the luggage

4

and purse were hers.  She looked down and shook her head from side to side, which Det. Stone understood to mean "no."  One of the detectives then searched the purse, and located more than 15 grams of an off-white substance, later determined to be heroin; some pills, later determined to be a Schedule IV controlled substance; and an Illinois identification card in Defendant's name.

Defendant was placed under arrest and Det. Stone, who was dressed in plain clothes, advised her of her rights under <u>Miranda</u> from a card that he keeps with him.  At the hearing, he read those rights into the record as he read them to Defendant that afternoon.  Defendant stated that she understood her rights and made an oral statement to the officers.  She was then taken to the Central Patrol Station, where she agreed to a further interview.  Officer Stone believed the second interview, at which Defendant made some further statements that were not identified at the hearing, took place in the booking area.

Less than one hour passed from the time Defendant was advised of her rights and when she completed her second interview at the station.  At the time, Defendant was approximately 27 years old and did not appear to be under the influence of any drugs or alcohol, did not appear to be suffering from any mental deficits, and appeared to be capable of understanding what was being said to her.  No promises or threats were made, nor was any force used to induce Defendant to waive her rights or make any statements.

5

**CONCLUSIONS OF LAW**

A. <u>**Search of the Vehicle and its Contents**</u>

In her motion, Defendant contends that the evidence seized by the police should be suppressed because Green did not have actual or apparent authority to consent to the search of the purse in which the narcotics and other evidence were located. The government does not attempt to justify the search based on Green's authority, asserting instead that Defendant, through her conduct, abandoned any privacy interest in the purse.

"A warrantless search of abandoned property does not violate the Fourth Amendment, as any expectation of privacy in the item searched is forfeited upon its abandonment." <u>United States v. James</u>, 353 F.3d 606, 615-16 (2003). <u>See</u> <u>Abel v. United States</u>, 362 U.S. 217, 241 (1960); <u>United States v. Segars</u>, 31 F.3d 655, 658 (8th Cir. 1994) (finding abandonment where defendant dropped package and fled); <u>United States v. Hoey</u>, 983 F.2d 890, 892 (8th Cir. 1993) (finding apartment was abandoned). The government bears the burden of establishing that property has been abandoned. <u>Hoey</u>, 983 F.2d at 892. "The issue is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished [his or] her reasonable expectation of privacy so that the search and seizure is valid." <u>Id.</u> at 892-3.

The question of whether a defendant intended to abandon the property "may be inferred from words spoken, acts done, and other objective facts, and all the relevant circumstances at the time of the alleged abandonment should be considered." <u>Id.</u> at 982. The determination of whether abandonment has occurred is not a subjective one, based

on the owner's intent, but rather is an objective analysis, based on all the objective facts and circumstances available to the investigating officers. United States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999); United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997). Two important factors in this analysis are "denial of ownership and physical relinquishment of the property." Tugwell, 125 F.3d at 602; see also James, 353 F.3d at 616. However, a verbal disclaimer of ownership is not required. Liu, 180 F.3d at 960; see also California v. Hodari D., 499 U.S. 621, 624, 629 (1991).

While the abandonment cannot be the product of unlawful police conduct, "[t]he existence of a police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." Segars, 31 F.3d at 658 (quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983)); see also Hodari D., 499 U.S. at 626 (defendant fled on approach of police and threw down drugs while fleeing); Liu, 180 F.3d at 960-962 (defendant left train after police questioning, leaving behind luggage); United States v. Willis, 967 F.2d 1220, 1223 (8th Cir. 1992) (defendant abandoned shopping bag by dropping it in parking lot, with police in pursuit).

Here, Defendant did not keep the purse with her, but rather placed it in the cargo area of the car. When asked if the purse was hers, she affirmatively denied ownership of the purse, by shaking her head "no," and she did not voice any objection when the search was conducted pursuant to Green's written consent. Courts, including the Eighth Circuit, have held that abandonment may arise from a defendant's disclaimer of ownership. See United States v. Hawkins, 116 Fed. Appx. 776, 778, 2004 WL 2711881, at *1 (8th Cir.

7

2004) (unpub.) (finding abandonment when defendant, who was approached at bus station, told officers that he did not have any luggage and had merely carried the bag to the front of the terminal for another, and consistently denied owning the bag); United States v. Ceja-Tinajero, 35 Fed. Appx. 284, 285, 2002 WL 1009294, at *1 (8th Cir. 2002) (unpub.) (holding the defendant abandoned his interest in luggage by telling the police, who approached him as he left the bus station, that the bag he had was not his); United States v. Washington, 146 F.3d 536, 538 (8th Cir. 1998) (reversing suppression and finding abandonment where the defendant failed to inform investigators, in response to their questions, that bag in overhead compartment of bus belonged to him and by thereafter denying bag belonged to him); United States v. Porter, 107 F.3d 582, 584 (8th Cir. 1997) (reversing suppression and finding abandonment where defendant denied second bag, that had defendant's name on it, was his and where he told officers to go ahead and search it because it was not his); United States v. Miller, 974 F.2d 953, 957-58 (8th Cir. 1992) (finding abandonment where the defendant, during consensual encounter at airport, stated that she did not check a bag, and after being detained, when officers asked if they could look inside bag for which she had claim check, responded that the officer could do whatever he wanted because it was not her suitcase); see also, United States v. O'Brien, 498 F. Supp. 2d 520, 535 (N.D.N.Y. 2007) (collecting cases); aff'd, 303 Fed. Appx. 948 (2d Cir. Dec. 22, 2008).

As the government notes, United States v. Sanders, 196 F.3d 910 (8th Cir. 1999) is very similar to the case at hand. There the police stopped a truck for a traffic violation,

and questioned the defendant, who was the passenger. The police noticed a bag in the bed of the pickup and asked both occupants of the truck who owned the bag and both denied ownership. The officers then removed the bag from the truck, inquired again about ownership, and both again denied any knowledge of the bag. Affirming the district court's denial of the defendant's motion to suppress, the Court held that "the defendant's 'statements to the officers that he did not own the bag were sufficient to constitute abandonment.'" Id. at 914 (quoting United States v. Sanders, 130 F.3d 1316, 1317 (8th Cir. 1997)).

While challenging Green's authority to provide consent to search her purse, Defendant does not contend that the conduct giving rise to the abandonment was the result of any unlawful police conduct. Nor would the facts here support any such claim. The initial questioning of Green took place in the context of a consensual encounter; the car in which Defendant was riding was already parked, and the officers did not approach until the driver returned from inside the store, at which time he gave consent to search the car. See United States v. Drayton, 536 U.S. 194, 201 (2002) ("Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means."); United States v. Davis, 202 F.3d 1060, 1063 (8th Cir. 2000) (holding that whether officer had reasonable suspicion for investigative stop "became academic" when defendant agreed to answer questions). Even if construed as a Terry stop, here the officers had reasonable suspicion based on

9

Defendant's payment of cash for the hotel, the hand-to-hand transaction observed, and Defendant's stop at another location investigators had connected to narcotics activity. See Miller, 974 F.2d at 958. The search that was thereafter begun was pursuant to Green's knowing and voluntary consent. See United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001).

At the hearing, Defendant emphasized that the officers had seen Defendant leave the hotel with the purse, and had never seen any of the other occupants touch the purse, apparently contending that a belief by the officers that the purse was Defendant's would preclude a finding of abandonment. The officers' observation of Defendant with the purse does not change the determination, however. As the Court held in Sanders, a conclusion that the property was abandoned within the meaning of the Fourth Amendment is still necessary, "[e]ven if the Agents knew that Sanders was lying when he claimed not to know anything about the . . . maroon bag." Sanders, 196 F.3d at 914; accord United States v. Fulani, 368 F.3d 351, 355 (3d Cir. 2004) (rejecting district court's ruling that once agents discovered defendant's name tag on luggage disclaimed by defendant they could no longer infer luggage was abandoned); Porter, 107 F.3d at 584 (finding abandonment regarding second bag located in luggage compartment, although it was ticketed with defendant's name and labeled "bag 2 of 2," and defendant had admitted to owning first bag, which bore the same name and was labeled bag "1 of 2"); Miller, 974 F.2d at 957-58 (finding abandonment although officers in originating city had observed the defendant check the bag, and had seen a claim check for the flight in the defendant's

purse).  As such, Defendant's motion to suppress should be denied, as she abandoned any privacy interest in the purse.

   B.     **Defendant's Statements**

At the hearing, the Defendant acknowledged that she is not challenging the admissibility of her statements based upon an independent claim that the statements were not voluntary.  Rather, her sole argument is that her statements should be suppressed because they were the result of the unlawful search of her purse.  Inasmuch as the police were authorized to search the purse based on Defendant's disclaimer of ownership and abandonment, her argument for suppression of her statements also fails.  In any event, on these facts the Court would find Defendant's waiver and statements were knowingly and voluntarily made.  Defendant was advised of her Miranda rights prior to making her two statements.  At the time, she was 27 years old, was not under the influence of any narcotics or alcohol, and had a prior narcotics conviction, and therefore was familiar with the criminal justice system.  And no promises or threats were made to induce her statements.  Thus, no basis exists to suppress Defendant's statements.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. #19] be **denied**.

The parties are advised that they have ten (10) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an

extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

                                                /s/ Audrey G. Fleissig
                                                AUDREY G. FLEISSIG
                                                United States Magistrate Judge

Dated this 30th day of September, 2009.